T.C. Memo. 2003-24


UNITED STATES TAX COURT


PAUL F. AND ELEANORE M. NICHOLS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 6725-01.                    Filed January 27, 2003.


Paul F. and Eleanore M. Nichols, pro sese.

<u>Jeremy L. McPherson</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, <u>Judge</u>:  Petitioners petitioned the Court to redetermine respondent's determination that they are liable for Federal income tax deficiencies for 1997 and 1998 of $59,117 and $62,558, respectively, and for accuracy-related penalties under section 6662(a) of $11,823.40 and $12,511.60.

We decide the following issues:

1.  Whether the trusts petitioners used during 1997 and 1998 should be disregarded for Federal income tax purposes because the trusts were shams.  We hold they should.

2.  Whether petitioners are liable for the accuracy-related penalties under section 6662(a).  We hold they are.

Unless otherwise noted, section references are to the applicable versions of the Internal Revenue Code.  Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some facts were stipulated and are so found.  The stipulated facts and the exhibits submitted therewith are incorporated herein by this reference.  Petitioners resided in Fair Oaks, California, when they petitioned the Court.  They filed 1997 and 1998 Federal income tax returns on October 15, 1998, and on July 28, 1999, respectively.  They did not report on those tax returns Social Security benefits, income from self-employment, and income received by the JREP Trust, PERJ Trust, and CSM Business Trust (collectively referred to as trusts[1]).

Petitioners established the trusts on January 1, 1992. Petitioners were the initial trustees of CSM Business Trust (CSM Trust), and Mr. Nichols was an initial trustee of PERJ Trust and

---

[1] We use the words "trust" and "trustee" in our findings of fact for narrative convenience.  We do not intend our use of those terms to indicate any conclusion about the substance of the transactions at issue.

of JREP Trust.[2]  PERJ Trust was the sole beneficiary of CSM Trust.  During 1997 and 1998, PERJ Trust was the sole beneficiary of JREP Trust.  The address of each of the trusts was the same as the address of petitioners' principal residence.

On January 1, 1992, petitioners transferred a parking lot sweeping business to CSM Trust.  Before this transfer, Mr. Nichols had operated the business as a sole proprietorship under the name "Clean Sweep Maintenance".  Petitioners then transferred their principal residence to PERJ Trust.

Petitioners transferred the equipment of the sweeping business to JREP Trust.  JREP Trust leased the equipment of the sweeping business to CSM Trust.

On October 13, 1995, petitioners signed and notarized a "Certification of Revocable Living Trust and Loan Agreement".  In the certification, petitioners stated that they are the trustors

---

[2] It is not clear from the record who were the trustees of any of the trusts during the relevant years.  James A. Nichols, petitioners' son, filed 1997 and 1998 Federal income tax returns for all three trusts in his capacity as trustee.  In the case at hand, Robert Hogue (Mr. Hogue) cosigned with petitioners the stipulation of facts as a trustee of JREP and PERJ Trusts.  In addition, Mr. Hogue filed petitions with the Court on behalf of these trusts.  See CSM Trust v. Commissioner, docket No. 9796-01L; JREP Trust v. Commissioner, docket No. 9795-01L; PERJ Trust v. Commissioner, docket No. 9794-01L; PERJ Trust v. Commissioner, docket No. 6727-01; JREP Trust v. Commissioner, docket No. 6726-01.  Because of Mr. Hogue's failure to establish his capacity as a trustee, the Court dismissed those cases on the ground that they were not filed by a proper party.

of PERJ Trust.  They stated further that PERJ Trust is revocable at their discretion.

On July 25, 1995, petitioners signed a "Uniform Residential Loan Application".  In the loan application, Mr. Nichols stated that he had been self-employed for 19 years as the owner-operator of a sweeping business doing business as Clean Sweep Maintenance. Petitioners also listed their personal checking and savings accounts.  Those same accounts were the bank accounts of CSM Trust, JREP Trust, and PERJ Trust.  During 1997 and 1998, petitioners were the only persons who had signatory authority over those bank accounts.

CSM Trust filed partnership returns for 1997 and 1998.[3] PERJ Trust was indicated as a partner holding a 99-percent profit interest in CSM Trust, and Ms. Nichols was said to be a partner holding a 1-percent profit interest in CSM Trust.  Those returns were filed under the same employer identification number as had been used on the trust income tax returns filed in the name of CSM Trust for taxable years before 1997.

On their 1997 and 1998 Federal income tax returns, petitioners understated their interest income by $25 and $45, respectively.  Petitioners also did not report Social Security

---

[3] The record does not indicate why CSM Trust filed partnership returns for those years.

benefits of $7,964 and $8,192 which they received during the respective years.

On April 4, 2000, petitioners sent a letter to respondent with respect to the examination of their tax returns. The record does not establish the taxable year(s) to which this letter pertained. The letter stated:

> This letter is to inform you that according to IRC section 6001, we have NEVER BEEN SERVED NOTICE by the SECRETARY. The LAW says, we will be served notice by the Secretary as to such books, records, and documents that the LAW requires us to keep. Not wanting to skip over the most important part of this LAW, but it clearly states that this LAW only applies to EVERY PERSON LIABLE FOR ANY TAX * * *

> *       *       *       *       *       *       *

> **As to the authority to examine us**, our research has shown that the only IR Code section that comes close to authorizing "some type of agent" to examine books and records is, IR Code section 7602. Yet this IR Code section has NEVER been published in the Federal Register under Title 26, only under Title 27. This tells us that unless you are a Title 27 Agent (BATF), you do not have investigative authority.

> *       *       *       *       *       *       *

> **As to you telling us that we have a tax liability, it just may not be correct**, let us review how a tax liability is created. According to the IR code, in order to determine liabilities, the Secretary must file an assessment and furnish a copy to the taxpayer upon request.

> *       *       *       *       *       *       *

> So pursuant to that section, please either furnish us with such a record, or notify us that none has been made, pursuant to IR Code section 6201 or as a consequence of the Secretary not exercising IR Code section 6020(b). Until such time that you furnish us a

copy of such an assessment, there is NO assessment, there is NO tax liability, and you DO NOT have the authority by any IR Code section to examine or investigate our tax return.

\*     \*     \*     \*     \*     \*     \*

Any further correspondence from you should be signed according to that code section, or you will be in violation of IRS Code section 7214(a)(7).  If we do not have a reply from you within 60 days, we will consider this matter dropped.

On July 14, 2000, petitioners mailed to respondent another letter, Statement of Protest.  The letter stated:

Let this letter serve as a **written protest** that we do not agree with any of the adjustments shown in IRS Form 4549-CG, Income Tax Examination Changes \* \* \*

\*     \*     \*     \*     \*     \*     \*

**As to Form 4549, Income Tax Examination Changes**.
Please be advised that we disagree with the examination report in all aspects, and will not accept it as an [sic] lawful official documents.  If the examiners report is a lawful official document, then the examiner failed to sign the report under penalty of perjury, as per IRC Section 6065.

\*     \*     \*     \*     \*     \*     \*

Where is the taxing statute that congress mandates you identify as to any tax liability that we may have?

OPINION

By notice of deficiency dated March 19, 2001, respondent determined that the trusts were shams and should be ignored for tax purposes.  Accordingly, respondent determined, petitioners underreported their taxable income by the amount of income

reported by the trusts.  In their petition, petitioners only deny having unreported income, without specifically addressing any of respondent's arguments.

We agree with respondent.  Respondent's determinations of deficiencies in the notice of deficiency are presumed correct, and petitioners bear the burden of proving those determinations wrong.  Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).  In certain circumstances, if a taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the taxpayer's liability for tax, section 7491(a) places the burden of proof on the Commissioner.[4]  See sec.

_____

[4] Specifically, sec. 7491(a)(1) and (2) provides in part:

SEC. 7491(a).  Burden Shifts Where Taxpayer Produces Credible Evidence.--

(1) General rule.--If, in any court proceeding, a taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer for any tax imposed by subtitle A or B, the Secretary shall have the burden of proof with respect to such issue.

(2) Limitations.--Paragraph (1) shall apply with respect to an issue only if--

(A) the taxpayer has complied with the requirements under this title to substantiate any item;

(B) the taxpayer has maintained all records required under this title and has cooperated

(continued...)

7491(a)(1); Rule 142(a). Section 7491 is effective with respect to examinations commenced after July 22, 1998. See Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001(c), 112 Stat. 727. Although the relevant examination was conducted after July 22, 1998, petitioners failed to meet the requirements of section 7491(a)(1) and (2) in that they did not present any credible evidence with respect to any factual issue relevant to ascertaining their tax liability and they did not maintain all records and cooperate with reasonable requests by respondent for information and documents. The burden is on the taxpayer to show that the prerequisites of section 7491(a)(2) are satisfied. Snyder v. Commissioner, T.C. Memo. 2001-255 (citing H. Conf. Rept. 105-599, at 240-241 (1998), 1998-3 C.B. 747, 994-995). Because petitioners failed to meet the requirements of section 7491(a), they bear the burden of proving that respondent's determinations of deficiencies in the notice of deficiency are wrong.

A trust is disregarded for tax purposes if in substance it is no more than a paper entity, a sham lacking any valid purpose other than the avoidance of tax. Markosian v. Commissioner, 73

---

[4](...continued)
with reasonable requests by the
Secretary for witnesses,
information, documents, meetings,
and interviews; and * * *

T.C. 1235, 1244-1245 (1980). This is so even if the trust was formed and had a separate existence under local law. Zmuda v. Commissioner, 79 T.C. 714, 720 (1982), affd. 731 F.2d 1417 (9th Cir. 1984).

Petitioners never introduced a scintilla of evidence which would disprove respondent's determinations that the trusts are shams. In fact, petitioners failed to establish the very existence of the trusts. Petitioners unsuccessfully attempted to prove the existence of the trusts by Forms 1041, U.S. Income Tax Return for Estates and Trusts, filed with respondent. Those forms do not persuade us that the trusts indicated in the forms actually existed. Petitioners have failed to introduce into evidence any document establishing the terms of the trusts, nor have they obtained the testimony of James A. Nichols, who is described on the trust returns as trustee. Petitioners were made aware of the need for the trust documents during the examination of their returns for the years in issue and during discovery. They have not demonstrated that they lacked access to those documents, nor have they shown that James A. Nichols is unavailable to testify. We infer from petitioners' failure to produce such evidence that either it does not exist or, if it does exist, it would be negative to petitioners. McKay v. Commissioner, 886 F.2d 1237, 1238 (9th Cir. 1989), affg. 89 T.C. 1063 (1987); Wichita Terminal Elevator Co. v. Commissioner, 6

T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947); Snyder v. Commissioner, supra.

We conclude on the basis of our analysis and on the record before us that the trusts were shams. Accordingly, we will ignore them for Federal income tax purposes.[5] We sustain respondent's determination that petitioners are liable for the deficiencies in Federal income taxes for 1997 and 1998.

We now turn to the issue of the accuracy-related penalties.

Respondent determined that petitioners are liable for accuracy-related penalties under section 6662(a) and (d) as a result of a substantial understatement of income tax. Respondent has the burden of production with respect to these penalties. Sec. 7491(c). Section 6662(a) imposes an accuracy-related penalty in the amount of 20 percent of the portion of the underpayment attributable to any substantial understatement of income tax. Sec. 6662(b)(2). The understatement is defined as the excess of the amount of tax required to be shown on the return over the amount of tax shown on the return reduced by any rebate. Sec. 6662(d)(2). Under section 6662(d)(1), the understatement is substantial if the amount of the understatement exceeds the greater of (1) 10 percent of the tax required to be shown on the return or (2) $5,000.

---

[5] We also note that the income which was reported by the trusts, and which respondent has treated as unreported income of petitioners, primarily derived from Mr. Nichols's sweeping business.

We conclude that respondent satisfied his burden of production with respect to these accuracy-related penalties, and that petitioners are liable for the same.  Petitioners failed to report the income purportedly received by the trusts.  Petitioners' tax return for 1997 showed $5,357 as tax due, while the actual tax due was $64,474.  Petitioners' tax return for 1998 showed $4,005 as tax due, while the actual tax due was $66,563.  It follows that petitioners' understatements of income taxes for 1997 and 1998 were substantial.  Petitioners failed to present any evidence that either of those understatements was due to reasonable cause.  Nor did petitioners present any evidence that they had made adequate disclosure, or that any exception applies in their case to the imposition of accuracy-related penalties for 1997 and 1998.

We sustain respondent's determination that petitioners are liable for accuracy-related penalties under section 6662(a) for 1997 and 1998.

We have considered all arguments made by the parties and have found those arguments not discussed herein to be irrelevant and/or without merit.  To reflect the foregoing,

Decision will be entered

for respondent.