T.C. Memo. 2008-146

UNITED STATES TAX COURT

MICHAEL N. AND BARBARA J. MERKIN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 766-06.                        Filed June 5, 2008.

<u>Neil L. Prupis</u>, for petitioners.

<u>Elizabeth S. Martini</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GOLDBERG, <u>Special Trial Judge</u>:  Respondent determined a
deficiency of $21,150 in petitioners' Federal income tax for 2003
and an accuracy-related penalty of $4,300 under section 6662(a).[1]

---

[1] Unless otherwise indicated, all section references are to
the Internal Revenue Code (Code) in effect for the taxable year
in issue, and all Rule references are to the Tax Court Rules of
(continued...)

The issues for decision are whether petitioner husband was engaged in the trade or business of gambling during 2003 and whether petitioners are liable for an accuracy-related penalty under section 6662(a).

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time the petition was filed, petitioners resided in New York, New York.

During the taxable year in issue petitioner husband (Dr. Merkin) was self-employed as a psychiatrist. His medical practice is located on Park Avenue in New York City. Dr. Merkin has been engaged in private practice as a psychiatrist since 1972. Petitioner wife (Mrs. Merkin) is, according to petitioners' tax return, an investor.

Petitioners' primary residence is located on West 13th Street in New York City. Petitioners own a secondary residence in Guilford, Connecticut.

In 1999, when Dr. Merkin was 59 years old he began to ponder new ways whereby he could augment his income in retirement. Motivated by his preexisting interest in gambling and in particular the card game of poker, Dr. Merkin began reading up on

---

[1](...continued)
Practice and Procedure.

betting games and attending card game conventions. At these conventions Dr. Merkin played poker and video slot machine games and purchased literature and other materials concerning casino games and odds-making.

Dr. Merkin became particularly fascinated with video poker. Unlike table poker, where a dealer deals a set of cards to a player or group of players, in video poker a machine deals a hand of five cards to a single player, and the player sees on the machine's screen--according to the cards he or she is dealt--the odds and subsequent payout amounts for possible final card combinations (such as a full house, straight suit, or flush suit of cards). During the latter half of 1999 Dr. Merkin decided to play video poker exclusively because he believed that it was a type of casino game where knowledge of mathematical probabilities--a knowledge he honed into his system--could improve his odds of winning video poker jackpots.

Although Dr. Merkin frequented several casinos and gaming establishments during the year in issue, he spent most of his time playing video poker at the Mohegan Sun Casino (Mohegan Sun) in Uncasvile, Connecticut. Mohegan Sun is approximately 40 miles from the petitioners' secondary residence in Guilford, Connecticut.

Dr. Merkin had a definitive routine when gambling at Mohegan Sun. First, upon arrival at the casino Dr. Merkin would scout

the various video poker machines located throughout the facility in order to find a machine that was paying out the highest jackpot amounts according to bets placed.  Dr. Merkin would then select a video poker machine to play by inserting a Mohegan Sun "Player's Club" card--similar to a credit card--into a slot on the machine.  Dr. Merkin relied upon the card to record the length of time that he played the machine and his betting history.  The card would also record his winnings and losses. When Dr. Merkin hit a jackpot on the machine, the card would record the jackpot and freeze both his card activity and the machine itself until a member of the Connecticut Board of Gaming could inspect the machine for signs of illegal tampering and/or software irregularities.

Each time that Dr. Merkin would use his Player's Club card in a gaming machine he would accrue Player's Club points.  These points were awarded at the rate of one point per dollar spent and according to the length of play.   Points were accruable and could be traded in at the casino for food, beverages, accommodations, travel, and other prizes.  The points had no cash value and were not awarded in addition to winning a video poker jackpot.

Mohegan Sun issued Dr. Merkin a Form W-2G, Certain Gambling Winnings, for 2003 reflecting gross winnings of $691,575.

Petitioners timely filed their 2003 income tax return. They reported total income of $228,157, consisting of the following items: (1) Wage income of $57,187; (2) taxable interest of $18; (3) taxable State income tax refund of $537; and (4) business income of $170,415.

Petitioners attached two Schedules C, Profit or Loss From Business, to their 2003 return. The first pertained to Dr. Merkin's private medical practice and reported gross receipts of $238,500 and deductions of $49,411 for a net Schedule C gain of $189,089. The second pertained to Dr. Merkin's activity as a professional gambler and reported gross gambling receipts of $691,575 and claimed a deduction of $710,249 of gambling losses, for a net Schedule C loss of $18,674. Thus, after combining the figures listed on both Schedule C forms, petitioners' net business income reported was $170,415.

In arriving at their adjusted gross income petitioners deducted $6,328 from their total income. Petitioners claimed itemized deductions of $82,120 and personal exemptions of $10,736, resulting in taxable income of $128,973 and a total tax of $37,719 after including the alternative minimum tax and self-employment tax.

On October 11, 2005, respondent issued petitioners a notice of deficiency. Respondent determined that Dr. Merkin was not engaged in the trade or business of gambling during 2003 and

therefore could not deduct his gambling losses on petitioners' Schedule C. Instead, respondent determined that petitioners had to report Dr. Merkin's gambling winnings in total income and could deduct the gambling losses on a Schedule A, Itemized Deductions, but only to the extent of Dr. Merkin's gambling winnings. On the basis of the foregoing, respondent determined that the amount of tax required to be shown on petitioners' 2003 return was $59,220. Petitioners reported tax due of $37,719 on their return, resulting in a deficiency of $21,501. Respondent also determined petitioners were liable for an accuracy-related penalty under section 6662(a) of $4,300.

OPINION

Burden of Proof

Taxpayers generally bear the burden of proving that the Commissioner's determinations are incorrect. Rule 142(a). However, section 7491(a) may in specific circumstances place the burden on the Commissioner with regard to any factual issue relating to the taxpayers' liability for tax if the taxpayers produce credible evidence with respect to that issue and meet the requirements found in section 7491(a)(2). The taxpayers bear the burden of proving that they have met the requirements of section 7491(a)(2). Miner v. Commissioner, T.C. Memo. 2003-39; Nichols v. Commissioner, T.C. Memo. 2003-24, affd. 79 Fed. Appx. 282 (9th Cir. 2003). Although neither party has directly raised section

7491(a) as an issue, on our review of the entire record, and for the reasons discussed infra, we conclude that petitioners have neither complied with all substantiation requirements of the Code nor maintained all required records. See secs. 6001, 7491(a)(2). Consequently, the burden of proof respecting factual issues relevant to their liability for the deficiency in their tax remains on them.

Tax Treatment of Gambling Losses

Section 61(a) defines gross income to mean all income from whatever source derived. Gambling winnings are includable in gross income. Paul v. Commissioner, T.C. Memo. 1992-582.

Section 162(a) allows deductions for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. If a taxpayer is engaged in the trade or business of gambling, his losses from gambling, up to the amount of his gains from such transactions, would be deductible in arriving at his adjusted gross income. See secs. 62, 165(d). Thus, if Dr. Merkin's gambling activity constituted a trade or business, his losses from gambling as reported on Schedule C up to the amount of his gambling winnings as reported on that schedule would be deductible in arriving at adjusted gross income. If his gambling activity did not constitute a trade or business, his gambling losses to the extent of his

winnings would be deductible as an itemized deduction on petitioners' Schedule A, in arriving at taxable income.[2]  Sec. 63(a).

Irrespective of whether the activity constituted a trade or business, section 165(d) provides that "Losses from wagering transactions shall be allowed only to the extent of the gains from such transactions."  See also sec. 1.165-10, Income Tax Regs.

Respondent determined that Dr. Merkin was not in the trade or business of gambling during 2003 and thus could not claim his gambling losses as a Schedule C deduction on petitioners' 2003 return.  Petitioners argue that Dr. Merkin was in the trade or business of gambling because he pursued the activity in good faith, with regularity, and for the production of income.

To be engaged in a trade or business within the meaning of section 162(a), an individual taxpayer must be involved in the activity with continuity, regularity, and with the primary purpose of deriving a profit.  Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987).  Whether the taxpayer is carrying on a trade or business requires an examination of all of the facts in each case.  Id. at 36.

---

[2] The shift from Schedule C to Schedule A lowers the ceiling imposed by sec. 68 on itemized deductions (other than the deduction for the gambling loss itself).  See Calvao v. Commissioner, T.C. Memo. 2007-57 n.6.

Although a reasonable expectation of a profit is not required, the taxpayer's profit objective must be actual and honest. Dreicer v. Commissioner, 78 T.C. 642, 644-645 (1982), affd. without published opinion 702 F.2d 1205 (D.C. Cir. 1983); sec. 1.183-2(a), Income Tax Regs. Whether a taxpayer has an actual and honest profit objective is a question of fact to be answered from all of the relevant facts and circumstances. Hastings v. Commissioner, T.C. Memo. 2002-310; sec. 1.183-2(a), Income Tax Regs.

The pertinent regulations set forth a nonexhaustive list of factors that may be considered in deciding whether a profit objective exists. These factors include: (1) The manner in which the taxpayer carries on the activity, (2) the expertise of the taxpayer or his advisers, (3) the time and effort expended by the taxpayer in carrying on the activity, (4) the expectation that assets used in the activity may appreciate in value, (5) the success of the taxpayer in carrying on other similar or dissimilar activities, (6) the taxpayer's history of income or losses with respect to the activity, (7) the amount of occasional profits, if any, which are earned, (8) the financial status of the taxpayer, and (9) the elements of personal pleasure or recreation. Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981); sec. 1.183-2(b), Income Tax Regs. No single factor or group of

factors is determinative.  Golanty v. Commissioner, supra at 426. A final determination is made only after a consideration of all of the relevant facts and circumstances.

Petitioners argue that we should hold that Dr. Merkin was engaged in the trade or business of gambling in 2003 and accordingly that petitioners are entitled to claim a loss attributable to this activity on their 2003 Schedule C.  After consideration of the facts contained in the record, and for the reasons discussed infra, we disagree.

Dr. Merkin did not carry on his gambling activity in a businesslike manner.  See sec. 1.183-2(b)(1), Income Tax Regs. He did not maintain any receipts, books, or records but instead relied solely upon Mohegan Sun to track all of his playing time, betting history, wins, and losses on his Player's Club card. Petitioners argue that it would have been too onerous for Dr. Merkin to have kept receipts, books, or records of his time spent at the casino and the amounts of his bets.  See sec. 6001 (pertaining to the requirement for a taxpayer to keep records). Dr. Merkin also testified that he did not maintain such records because he assumed that Mohegan Sun was doing that for him.  He also admitted, however, that the Player's Club card did not always record his activity, since the record of hours spent playing video poker shown on his Player's Club statement for 2003 did not comport with his estimate of the actual amount of time he

spent playing video poker during the year in issue. Although the Court has acknowledged and accepted a taxpayer's reliance on a Player's Club card statement as a record of his winnings and losses, we have not accepted the argument that where a card statement does not show all of the taxpayer's activity (i.e., is an incomplete statement), the taxpayer is thereby excused from providing other evidence of his winnings and losses. See Hardwick v. Commissioner, T.C. Memo. 2007-359; Lutz v. Commissioner, T.C. Memo. 2002-89.

Petitioners were misguided to assume that Dr. Merkin's Players Club card would keep a complete business record of his activities at a casino and that this record would absolve them of the duty to maintain business records. See sec. 6001. It is the taxpayer's duty, and not that of the casino, to maintain such records. Sec. 6001. In short, his lack of records and accountability for his activities illustrates to us that Dr. Merkin did not carry on his video poker playing in a businesslike manner.

To further illustrate this point, although Dr. Merkin testified that he spent 47 out of 52 weekends during 2003 playing video poker at Mohegan Sun for at least 24 hours per weekend (for a total of approximately 1,128 hours), he did not provide any credible evidence to corroborate this testimony. In fact, the only credible evidence in the record with respect to Dr. Merkin's

time spent playing video poker in 2003 was a Player's Club
statement generated by Mohegan Sun and provided by petitioners at
trial. This statement shows that Dr. Merkin spent 19,140 minutes
or 319 hours (19,140/60) playing video poker at Mohegan Sun in
2003. We do not believe that Dr. Merkin spent 1,128 hours at
Mohegan Sun solely on the basis of his testimony to that effect
and in the absence of any receipts or records aside from a
noncontemporaneous calendar of time spent at the casino that
petitioners produced in anticipation of trial. Moreover, Dr.
Merkin admitted that it was a mistake on his part to have relied
on the Player's Club card to record all of his time spent playing
video poker. We note that if petitioners were as concerned with
the amount of Player's Club points that Dr. Merkin was earning
from his playing as he represented in his argument, he would
likely have checked the balance of points and time played on his
Player's Club card before the end of 2003. Then, if a
discrepancy existed between the casino's record and Dr. Merkin's
estimate of hours spent playing video poker at the casino, he
could have resolved the issue and obtained an accurate accounting
of his time spent playing video poker at the casino during the
year in issue. He failed to do this.

We infer that Dr. Merkin's testimony that he spent
approximately 1,128 hours playing video poker during 2003
represented petitioners' attempt to equate the amount of time Dr.

Merkin spent practicing medicine with the amount of time he spent playing video poker. Dr. Merkin did not testify as to the amount of time he spent engaged in his medical practice in 2003, and for the aforementioned reasons we do not find his testimony and his calendar of the time purportedly spent at Mohegan Sun in that year credible. Accordingly, we cannot make a well-informed judgment as to how much time Dr. Merkin devoted to each of these activities during the year in issue.

Ultimately, and on the basis of the one source of credible evidence before us--the Player's Club statement--we believe that Dr. Merkin spent 319 hours playing video poker at Mohegan Sun in 2003. Despite Dr. Merkin's playing time (whether it was 319 or 1,128 hours), he did not testify that he spent any time honing or adjusting his system when it became clear to him that he was not on track to make a profit playing video poker in 2003. See sec. 1.183-2(b)(2) and (3), Income Tax Regs. Dr. Merkin did testify that he read video poker magazines and kept abreast of the machines and their respective payout histories at the casino, but he did not prove that he used this knowledge to adjust his system in the light of his overall losses. We view Dr. Merkin's failure to spend any time adjusting and/or improving his system as a factor weighing against his gambling activity's being a trade or business.

Although Dr. Merkin may have read video poker magazines and spent time on the casino floor scouting various machines, there is nothing in the record to validate petitioners' claim that Dr. Merkin is a renowned poker expert. See sec. 1.183-2(b)(2), Income Tax Regs. Aside from his explanation of how the video poker game machine works, Dr. Merkin offered no testimony as to the specifics of his system for increasing the odds of winning video poker jackpots. In fact, Dr. Merkin admitted at trial that he had recently quit playing video poker because his system simply did not work.

Petitioners maintain that Dr. Merkin played video poker with an honest intent to make a profit and that he did in fact make a profit, if not always through his gambling winnings, then through the many Player's Club points that he accrued while playing video poker at Mohegan Sun. See sec. 1.183-2(b)(7), Income Tax Regs.

To be sure, petitioners argue at length that the added element of the Player's Club points distinguishes their case from other cases involving gambling losses because the large number of Player's Club points that Dr. Merkin earned and redeemed in 2003 illustrates that his activity was not only entered into for profit but was, in fact, profitable. We disagree.

Petitioners filed Schedules C for Dr. Merkin's gambling activities for all of the 4 taxable years preceding the year in issue. Petitioners reported a total of $105,326 in gambling

losses for those years and reported a gambling loss of $18,674 for 2003. Despite those losses, Dr. Merkin maintains that his activities were profitable because he redeemed hundreds of thousands of his accrued Player's Club points for items such as airfare, travel, and automobiles throughout the years, including 2003.

Petitioners have maintained throughout their case that Dr. Merkin's earning hundreds of thousands of Player's Club points was, in fact, profit to them and that the value of the points should be included in the amount of profit generated by Dr. Merkin's gambling activities. It is petitioners' position that if we include the value of these points as profit, we will see not only that Dr. Merkin's gambling activity was indeed profitable, but also that Dr. Merkin continued to engage in the gambling because of an actual profit objective as evidenced by the value of the Player's Club points. We disagree.

We fail to see how Dr. Merkin's earning Player's Club points supports petitioners' contention that his gambling activity was engaged in with an actual and honest profit objective. Dr. Merkin's Player's Club points were based on his dollar amounts bet and length of play. While there is no accounting of the points Dr. Merkin earned and redeemed for 2003 and there is nothing in the record showing the items for which he redeemed the points for 2003, such evidence would do nothing more than show

what "prizes" Dr. Merkin received in exchange for his total wagering at Mohegan Sun in 2003. That is, if petitioners received airfare, accommodations, and/or trips from the Player's Club program, they did so because of the amount of money that Dr. Merkin was spending at the casino. The items he earned through redemption of his Player's Club points were items that he essentially paid for with the amounts that he bet. Put another way, if petitioners were to have purchased all of the items they received through the redemption of their Player's Club points in 2003, it is highly improbable that the value of those items would equal the amount of money wagered by Dr. Merkin in 2003.

Moreover, and with respect to the items for which Dr. Merkin redeemed his Player's Club points in 2003, we note that petitioners failed to report as income the value of any car, airfare, or travel that they acquired from the casino in 2003. In Libutti v. Commissioner, T.C. Memo. 1996-108, we held that the value of such items awarded by a casino to a taxpayer-patron, if included in his gross income, could be considered a gain from wagering against which he was allowed to offset his wagering losses. However, if Dr. Merkin received any items of that type in redemption of his Player's Club points, we could not permit him to have it both ways; that is, by taking the value of those items into account to determine whether his gambling activity was engaged in with the actual intent of making a profit while not

including the value of those items in income. See id.; cf. Portland Golf Club v. Commissioner, 497 U.S. 154, 168 (1990).

Petitioners also argue that Dr. Merkin's substantial income from his medical practice should have no effect on our determination with respect to petitioners' profit objective. See Commissioner v. Groetzinger, 480 U.S. 23 (1987). We disagree. The facts in the present case differ from those in Groetzinger. There, the Supreme Court noted that the taxpayer, following the termination of his 20-year employment in February, spent the balance of that year--and most of his time--engaged in parimutuel betting and that the taxpayer looked to that activity and his winnings from it as his livelihood. To the contrary, Dr. Merkin was self-employed as a psychiatrist with a longstanding practice on Park Avenue in New York City. Petitioners did not rely on Dr. Merkin's winnings to support themselves. See sec. 1.183-2(b)(8), Income Tax Regs. Petitioners had ample disposable income as a result of Dr. Merkin's practice to cover the expenses associated with two residences as well as Dr. Merkin's spending while at Mohegan Sun.

Finally, petitioners have not persuaded us--despite Dr. Merkin's testimony about his system and the Player's Club points--that Dr. Merkin, when he played video poker machines programmed by the casino, had as his primary objective income or profit. As Dr. Merkin candidly admitted through his testimony regarding his

scouting the various machines, casinos are in the business of generating revenues. To be sure, Dr. Merkin's scouting process illustrated how casinos manipulate the computer gaming machines to increase the odds that the house will usually prevail. As a result, his system--developed in hopes of beating video poker machines--ultimately proved ineffective. Dr. Merkin conceded this reality when he admitted at trial that his system did not work.

Accordingly, in the light of section 1.183-2, Income Tax Regs., and on the basis of our analysis of the facts of this case, we hold that Dr. Merkin's gambling activity in 2003 did not constitute a trade or business.

Accuracy-Related Penalty Under Section 6662(a)

Respondent determined that petitioners are liable for an accuracy-related penalty under section 6662(a) for 2003 of $4,300.

Section 6662(a) imposes a penalty in the amount of 20 percent of the portion of the underpayment to which section 6662 applies. As relevant to this case, the penalty applies to any portion of the underpayment that is attributable to any substantial understatement of income tax. Sec. 6662(b)(2). There is a "substantial understatement of income tax" if the amount of the understatement exceeds the greater of 10 percent of

the tax required to be shown on the return or $5,000.  Sec. 6662(d)(1).

Although the Commissioner bears the burden of production with respect to the penalty, in this case, petitioners failed to raise the penalty as an issue in their petition, at trial, or on brief.  See sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).  The issue is thereby deemed conceded.  See Rule 34(b)(4); Swain v. Commissioner, 118 T.C. 358 (2002).

On the record before us, and for the reasons previously discussed, we hold that Dr. Merkin's gambling activity in 2003 did not rise to the level of a trade or business activity as contemplated by section 162(a).  See also sec. 1.183-2, Income Tax Regs.  Accordingly, and because petitioners have conceded respondent's application of the accuracy-related penalty under section 6662(a), we find for respondent.

To reflect our disposition of the issues,

Decision will be entered for respondent.